UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL TANNER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TAX SERVICES OF AMERICA, INC.,<br><br>　　　　　Defendant. | Case No. 25-cv-01940-DMR<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Regarding Docket Nos. 14, 23 |

　　　　Plaintiff Angel Tanner brings this class action employment wage and hour case against Defendant Tax Services of America, Inc. ("TSA"). TSA moves to compel this matter to arbitration. [Docket Nos. 14 (Mot. Notice); 15 (Mot.); 19 (Reply).] Tanner opposes. [Docket No. 18 (Opp'n).] This motion is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, TSA's motion is granted.[1]

## I. BACKGROUND

### A.　Allegations and Procedural History

　　　　Tanner was employed by TSA on a seasonal basis as a tax preparer from January 2021 through January 2024. [Docket No. 18-1 (Angel Tanner Decl., May 2, 2025) ¶¶ 2-3.] She alleges that TSA failed to properly pay its non-exempt employees for all hours worked, provide meal and rest periods, reimburse business expenses, maintain accurate time records, provide accurate wage statements, and timely pay wages owed upon separation of employment. [Docket No. 1, Ex. B (Am. Compl.) ¶ 21.]

　　　　Tanner filed this action in state court on November 14, 2024. [Docket No. 1, Ex. A

---

[1] The court grants TSA's unopposed request for the court to take judicial notice of the AAA rules pursuant to Federal Rule of Evidence 201. [Docket No. 16 (Request for Judicial Notice)]; *see, e.g., Meadows v. Dickey's Barbecue Restaurants Inc.*, 144 F. Supp. 3d 1069, 1078 n.5 (N.D. Cal. 2015) (taking judicial notice of AAA rules in a motion to compel arbitration).

(Compl.).] On December 30, 2024, Tanner filed an amended complaint alleging nine claims: (1) failure to pay overtime wages in violation of Cal. Lab. Code §§ 200-204, 218.6, 512, 558, 1194, 1198; (2) failure to compensate for all hours worked in violation of Cal. Lab. Code §§ 200-204, 216, 225.5, 226, 500, 510, 558, 1197, 1198; (3) failure to provide meal periods in violation of Cal. Lab. Code §§ 226.7, 512; (4) failure to provide rest periods in violation of Cal. Lab. Code § 226.7; (5) failure to furnish accurate wage and hour statements in violation of Cal. Lab. Code §§ 226(e), 226.3; (6) failure to reimburse business expenses in violation of Cal. Lab. Code § 2802; (7) failure to pay final wages on time in violation of Cal. Lab. Code §§ 201-204; (8) unfair business practices under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; and (9) violations of California's Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698 *et seq.* Am. Compl. TSA filed an answer and timely removed the case to federal court pursuant to the Class Action Fairness Act on January 28, 2025. [Docket No. 1 (Removal Notice) ¶¶ 4, 7.] TSA filed this motion to compel arbitration and stay court action on April 18, 2025. Mot.

### B. The Arbitration Agreement

The instant motion pertains to Tanner's second period of employment with TSA. In October 2021, Tanner submitted a job application. [Docket No. 15-1 (Elizabeth Kollra Decl., Feb. 18, 2025) ¶ 3.]; Tanner Decl. ¶ 4. As part of the pre-hire process, Tanner was instructed to create an online account on TSA's personnel management system, Dayforce, in order to complete paperwork. Kollra Decl. ¶ 3. Tanner states that her former manager instructed her to complete the paperwork as soon as possible to be ready to work in time for tax season. Tanner Decl. ¶ 6. Tanner further states that the only device she had to view the documents was her mobile phone, and that the documents were barely legible on it. *Id.* at ¶¶ 7-9.

On October 14, 2021, Tanner was presented with a "Consent to Electronic Signature" agreement through Dayforce, which she signed. *Id.* at ¶ 8-9; Kollra Decl. ¶ 4. In so doing, Tanner agreed "to electronically access, receive, review, sign, and authenticate certain documents, forms, and/or letters . . . including but not limited to the . . . Mutual Arbitration Agreement. Kollra Decl. ¶ 4, Ex. 1. The Consent to Electronic Signature provided instructions for accessing PDF documents electronically or requesting hard copies of documents. Kollra Decl. ¶ 4, Ex. 1. The

1  Consent to Electronic Signature also provided that Tanner could withdraw consent to use
2  electronic signatures, in which case she would be required to sign hard copies.  Kollra Decl. ¶ 4,
3  Ex. 1.

4        The same day, Tanner signed TSA's Mutual Arbitration Agreement via electronic
5  signature in Dayforce, which is attached to Elizabeth Kollra's declaration as Exhibit 3.  Kollra
6  Decl. ¶ 5, Ex. 3.  Tanner recalls viewing a document that looked like Exhibit 3 and signing it.
7  Tanner Decl. ¶¶ 8-9.  According to TSA, the PDF version of the Mutual Arbitration Agreement
8  (attached as Exhibit 2 to Kollra's declaration) was also available to Tanner in Dayforce.  Kollra
9  Decl. ¶ 5, Ex. 2.  According to Tanner, TSA did not provide her with a copy of Exhibit 2 until this
10 litigation.  Tanner Decl. ¶ 9.

11       As part of the onboarding process after she was hired, Tanner again signed the Mutual
12 Arbitration Agreement via electronic signature in Dayforce on November 22, 2021, which is
13 attached as Exhibit 5.  Kollra Decl. ¶ 7, Ex. 5.  Tanner recalls viewing a document that looked like
14 Exhibit 5 and signing it.  Tanner Decl. ¶¶ 8-9.  The language of the Mutual Arbitration
15 Agreements in Exhibits 3 and 5 is identical.  *Compare* Kollra Decl. Ex. 3 *with* Ex. 5.

16       The version of the Mutual Arbitration Agreement that Tanner signed twice (Exhibits 3 and
17 5) and the PDF version of the Mutual Arbitration Agreement purportedly available on Dayforce
18 (Exhibit 2) contain identical terms.  Kollra Decl. Exs. 2, 3, 5.  Most notably, all documents (1)
19 provide that "the Company and Individual . . . agree all legal disputes and claims between them
20 shall be determined exclusively by final and binding arbitration," *Id.* at ¶ 1; (2) delegate to the
21 arbitrator "exclusive authority to resolve any dispute relating to the formation, enforceability,
22 applicability, or interpretation of this Agreement, including without limitation any claim that it is
23 void or voidable," *Id.* at ¶ 4; (3) include a class action waiver, *Id.* at ¶ 5; and (4) state that "**IF**
24 **INDIVIDUAL ACCEPTS OR CONTINUES EMPLOYMENT OR OTHER ASSOCIATION**
25 **WITH THE COMPANY AFTER RECEIVING NOTICE OF THIS AGREEMENT, SUCH**
26 **EMPLOYMENT OR OTHER ASSOCIATION SHALL CONSTITUTE ACCEPTANCE OF**
27 **THE TERMS OF THIS AGREEMENT**," *Id.* at 9.  There are only three differences in the
28 documents, all immaterial to the issue at hand.  First, they are formatted differently: Exhibit 2 is

United States District Court
Northern District of California

3

broken into paragraphs, whereas Exhibits 3 and 5 consist of a single block of text. *Compare* Kollra Decl. Ex. 2 *with* Exs. 3, 5. Second, Exhibit 2 includes a signature line for Defendant's representative, whereas Exhibits 3 and 5 do not. *Id.* Third, Exhibits 3 and 5 include instructions not present in Exhibit 2 about how to electronically sign the agreement. *Id.* at ¶ 9.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs written arbitration agreements affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001). Section 4 of the FAA ensures that "private agreements to arbitrate are enforced according to their terms" by expressly authorizing a party to an arbitration agreement to petition a United States district court for an order directing that "arbitration proceed in the manner provided for in such agreement." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) and 9 U.S.C. § 4). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4).

A purported arbitration agreement presents three "gateway" issues: (1) "whether an agreement to arbitrate was actually formed," (2) "whether that agreement is 'valid,' in other words, whether there are any defenses," and (3) "whether the agreement encompasses the dispute at issue." *Davenport v. Nvidia Corp.*, 719 F. Supp. 3d 1019, 1025 (N.D. Cal. 2024) (quoting *Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 634-35 (9th Cir. 2021) and *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1008 (9th Cir. 2023)). While gateway questions are typically resolved by a court, "some 'gateway' issues pertaining to an arbitration agreement, such as issues of validity and arbitrability, can be delegated to an arbitrator by agreement." *Ahlstrom*, 21 F.4th at 634. However, "parties cannot delegate issues of formation to the arbitrator." *Id.* at 635.

Thus, when presented with a contract that includes both an arbitration provision and a delegation provision, a reviewing court must first "resolve any challenge that an agreement to arbitrate was never formed." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir.

4

2022). If an agreement to arbitrate was formed, the court must next "resolve any challenge directed specifically to the enforceability of the delegation clause." *Id.* "Finally, if the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance." *Id.*

In resolving motions to compel arbitration, the summary judgment standard applies. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). In addition, federal courts apply state-law principles of contract. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). The parties do not dispute that California law applies. Mot. 5; Opp'n 9.

## III. DISCUSSION

### A. Contract Formation

The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence that an agreement to arbitrate exists. *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). TSA carried its burden by producing two arbitration agreements bearing Tanner's signature. Tanner Decl. Exs. 3, 5; *Randas v. YMCA of Metro. L.A.*, 17 Cal.App.4th 158, 163 (1993) ("[O]ne who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms . . . ." (quoting 1 Witkin, Summary of Cal. Law (9th ed. 1987), § 120, p. 145)). Further, it is undisputed that Tanner received Exhibits 3 and 5—which expressly condition employment on acceptance of the arbitration agreement—and continued her employment thereafter. Kollra Decl. ¶¶ 5, 7; Tanner Decl. ¶¶ 3, 8. Under California law, Tanner's continued employment constitutes acceptance of Exhibits 3 and 5. *See Craig v. Brown & Root, Inc.*, 84 Cal.App.4th 416, 420 (2000) ("[A] party's acceptance of an agreement to arbitrate may be . . . implied-in-fact where . . . the employee's continued employment constitutes her acceptance of an agreement proposed by her employer.").

Tanner contends that TSA has failed to demonstrate the existence of an agreement to arbitrate, asserting that while TSA relies on Exhibit 2 as the operative agreement, she only signed Exhibits 3 and 5. Opp'n 6-7. In so doing, Tanner concedes that she signed Exhibits 3 and 5, which are agreements to arbitrate, and which also contain language identical to the agreement in

5

Exhibit 2.[2] *Id.*; *see also* Tanner Decl. ¶¶ 8-9 ("I recall that the documents I viewed . . . looked like . . . Exhibits . . . 3[] and 5 . . . I scrolled down to the end of the documents and followed the instructions to sign the documents entering my initials and then clicking the submit button."). Tanner asserts that she was unable to read Exhibits 3 and 5. Tanner Decl. ¶ 9. While this argument may go to the procedural unconscionability or validity of the contract, it does not undermine the fact that a contract was formed. *See Randas*, 17 Cal.App.4th at 163 (explaining that failure or inability to read is not a defense to contract formation). Finally, Tanner does not address whether her continued employment constituted a manifestation of assent to the arbitration agreement.

The court finds that an agreement to arbitrate was formed and next considers whether other gateway issues have been delegated to the arbitrator. *See Caremark*, 43 F.4th at 1030.

**B. Delegation Clause**

Exhibits 3 and 5 (hereinafter "the Arbitration Agreement") contain a delegation provision agreeing to arbitrate threshold issues of arbitrability. In pertinent part, the delegation provision provides:

> Except as noted in the following paragraph, the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation of this Agreement, including without limitation any claim that it is void or voidable. The parties waive the right to have a court determine the enforceability of this Agreement but may seek a court order delegating such questions to the arbitrator.

Kollra Decl. Exs. 3, 5, ¶ 4.

The following paragraph includes an exception to the delegation provision specific to the class action waiver:

> **TO THE MAXIMUM EXTENT PERMITTED BY LAW, (A) THE ARBITRATOR IS PROHIBITED FROM CONSOLIDATING THE CLAIMS OF OTHERS INTO ONE PROCEEDING OR FASHIONING A PROCEEDING AS A CLASS, COLLECTIVE, REPRESENTATIVE, JOINT, OR GROUP ACTION (COLLECTIVELY, "CLASS ACTION") OR AWARDING RELIEF TO A GROUP OF CLAIMANTS OR EMPLOYEES IN ONE PROCEEDING, AND (B) THE PARTIES WAIVE ANY RIGHT TO**

---

[2] For this reason, the court need not address whether Tanner also agreed to the contract in Exhibit 2.

6

**PROCEED IN A CLASS ACTION.** Any dispute concerning the scope or validity of this paragraph shall be decided by a court of competent jurisdiction and not the arbitrator.

Kollra Decl. Exs. 3, 5, ¶ 5.

Tanner does not dispute the existence of this delegation clause. Opp'n 9. However, she argues that the delegation provision should not be enforced because it is (1) not "clear or unmistakable," or (2) unconscionable. *Id.* at 7-19. The court addresses each argument in turn.

### 1. Clear and Unmistakable

"Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quotation marks and citation omitted, cleaned up). An express agreement to arbitrate arbitrability may satisfy this standard. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (citation omitted).

Here, the delegation clause unambiguously delegates to the arbitrator "any dispute relating to the formation, enforceability, applicability, or interpretation of this Agreement" while reserving for the court disputes concerning the scope or validity of the class action waiver. *See* Kollra Decl. Exs. 3, 5, ¶¶ 4, 5.

Tanner argues that the class action carve-out conflicts with the delegation provision, rendering the latter uncertain. Opp'n 8-9. The Ninth Circuit rejected this precise argument in *Mohamed*, which involved a similar arbitration agreement that included both a broad delegation clause and a carve-out for challenges to a class action waiver. 848 F.3d at 1207-09. The court found no inconsistency between the delegation clause and the carve-out, emphasizing that the delegation clause was qualified by the phrase "[e]xcept as it otherwise provides," which "eliminated the inconsistency between the general delegation provision and the specific carve-out." *Id.* at 1209.

As in *Mohamed*, the agreements at issue here include a general delegation provision preceded by the phrase "[e]xcept as noted in the following paragraph," followed by a carve-out for challenges to the class action waiver. Kollra Decl. Exs. 3, 5 , ¶¶ 4, 5. Accordingly, "[t]he delegation provisions clearly and unmistakably delegated the question of arbitrability to the

7

1  arbitrator for all claims except challenges to the class, collective, and representative action waivers
2  . . . ." *Mohamed*, 848 F.3d at 1209.

### 2. Unconscionable

Like any arbitration agreement, an agreement to arbitrate a gateway issue is valid "save upon such grounds as exist at law or in equity for the revocation of any contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010) (quoting 9 U.S.C. § 2). If a party "specifically challenges" the validity of the delegation provision, "'the federal court must consider the challenge before ordering compliance' with it." *Bielski*, 87 F.4th at 1009 (quoting *id.* at 71). However, challenges to the validity of an arbitration agreement as a whole must be left to the arbitrator. *Rent-A-Ctr.*, 561 U.S. at 72.

To specifically challenge the validity of a delegation provision—as opposed to an arbitration agreement as a whole—the "party resisting arbitration must mention that it is challenging the delegation provision and make specific arguments attacking the provision in its opposition to a motion to compel arbitration." *Bielski*, 87 F.4th at 1009. "[A] party may challenge the delegation provision and the arbitration agreement for the same reasons, so long as the party specifies why each reason renders the specific provision unenforceable." *Id.* at 1009-10.

Tanner contends that the delegation provision is both procedurally and substantively unconscionable, as is required under California law. *Id.* at 1013 ("For a court to refuse to enforce a provision due to unconscionability, a party must show the provision has elements of both procedural and substantive unconscionability"); Opp'n 10-19. The court need not consider Tanner's procedural unconscionability arguments, however, because none of her substantive unconscionability challenges is specific to the delegation provision. *See Rent-A-Ctr.*, 561 U.S. at 73.

Tanner advances three arguments for why both the delegation provision and the Arbitration Agreement are substantively unconscionable: (1) they allegedly apply to claims unrelated to her employment, (2) they are allegedly indefinite in duration, and (3) they allegedly permit third parties to enforce the Arbitration Agreement against her, but not vice versa. Opp'n 15-19.

While Tanner mentions that she is challenging the delegation provision, she does not

8

"make specific arguments attacking the provision." *See Bielski*, 87 F.4th at 1009. Instead, Tanner attacks the Arbitration Agreement as a whole and includes only conclusory assertions that her arguments likewise apply to the delegation provision. Opp'n 15-19. For example, the only reference to the delegation clause in Tanner's indefinite duration argument appears in the final sentence, where she states: "Accordingly, the arbitration agreements, and the delegation clause contained therein, are by their express terms indefinite in duration and not terminable at will, making them substantively unconscionable." *Id.* at 18.

Moreover, Tanner's unconscionability arguments rely exclusively on a California decision that analyzed an arbitration agreement as a whole, not a delegation clause. *Cook v. Univ. of S. Cal.*, 102 Cal.App.5th 312, 321-28 (2024). *Cook* expressly distinguished its analysis from cases addressing the enforceability of delegation clauses. *Id.* at 322-23 (distinguishing *Tiri v. Lucky Chances, Inc.*, 226 Cal.App.4th 231 (2014) because it "was concerned exclusively with the enforceability of a delegation clause" and "did not address whether the scope of the arbitration agreement was otherwise unconscionable."). Tanner does not explain how *Cook*'s analysis of the unconscionability of an entire contract applies to the unconscionability of a delegation clause, nor does she explain how her arguments "specifically relate[] to the validity of the delegation provision." *See Bielski*, 87 F.4th at 1010. Accordingly, the court does not have the "green light" to consider her underlying arguments. *See id.*

Even if Tanner had adequately challenged the delegation clause, her substantive unconscionability arguments would fail on the merits. First, the delegation clause does not "apply to all claims" as Tanner suggests. Opp'n 16. Rather, it applies to "all claims pertaining to Individual's employment or other relationship with the Company." Kollra Decl. Exs. 3, 5, ¶ 1; *See Johnston v. Sensei AG Holdings, Inc.*, No. B334773, 2025 WL 703258, at *7 (Cal. Ct. App. Mar. 5, 2025) (finding that an agreement to arbitrate claims arising out of the plaintiff's "employment or relationship with the company" was not unconscionably broad, as it "cover[ed] only disputes relating to plaintiff's employment"). Second, the duration term at-issue here is distinguishable from *Cook*. There, the court seized on specific language which is not present here; namely, that the agreement "could only be revoked in a writing signed by [plaintiff] and [defendant's]

9

1  president." *Cook*, 102 Cal.App.5th at 325.  Third, Tanner's speculative concerns about third
2  parties bringing claims against her unrelated to employment rest on a misreading of the scope of
3  the agreement.  *See Johnston*, 2025 WL 703258, at *7 (rejecting identical third-party mutuality
4  argument).
5        In conclusion, the parties formed an agreement to arbitrate containing an enforceable
6  delegation provision.  As such, the parties' remaining arguments concerning the enforceability of
7  the Arbitration Agreement itself are for the arbitrator to decide in the first instance.  *See*
8  *Caremark*, 43 F.4th at 1030.  To the extent the action raises nonarbitrable issues, they must be
9  stayed until the arbitrable issues are fully arbitrated in accordance with the terms of the Arbitration
10 Agreement.  Kollra Decl. Exs. 3, 5, ¶ 5; *Adolph v. Uber Techs., Inc.*, 14 Cal.5th 1104, 1123-24
11 (2023).  The court thus grants the motion to compel arbitration.

12 **C.  Stay**

13 "When a district court finds that a lawsuit involves an arbitrable dispute, and a party
14 requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."
15 *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).  TSA requests a stay.  Mot. 16.  Accordingly, the
16 court stays this suit pending arbitration.

**CONCLUSION**

18 For the foregoing reasons, the court grants TSA's motion to compel arbitration and stays
19 this suit pending arbitration.  TSA's administrative motion to stay obligations under the initial case
20 management conference order [Docket No. 23] is denied as moot.
21 For case management purposes, the court implements the stay by administratively closing
22 the case. The parties shall file a joint status report within 30 days of a final arbitration order.
23 Filing the status report will lift the stay by reactivating the case.
24 **IT IS SO ORDERED**.
25 Dated: June 4, 2025

Donna M. Ryu
Chief Magistrate Judge